# SUPREME COURT OF TEXAS.

## AUSTIN TERM, 1853.

---

### THE STATE v. BLAKENSHIP.

Where there was no assignment of errors and no appearance for the appellee, and the counsel for the appellant suggested in his brief, by mistake, that the appeal came up before the Act of 1850, requiring assignments of errors to be made below, took effect, whereby the Court was misled, and delivered an opinion reversing and remanding the case, on motion of the appellee, at same Term, the judgment was set aside and the appeal dismissed for want of an assignment of errors.

Appeal from Sabine. Suit to establish a headright. Judgment for the plaintiff. The State appealed, but failed to file an assignment of errors before taking the transcript from the Clerk's office. There was no appearance for the appellee, and the Attorney General submitted the case on his brief, at the same time filing an assignment of errors, and suggesting, by mistake, that the appeal had been perfected before the Act of 1850, which requires assignments of error to be filed below, took effect. There was an opinion delivered, reversing and remanding the case, whereupon the appellee appeared and

moved the Court to set aside the judgment and dismiss the appeal, for want of an assignment of errors. Motion sustained; but no opinion in writing.

*Attorney General*, for appellant.

*B. J. Lewis*, for appellee.

---

## JACOB BURLESON'S HEIRS v. JOHN BURLESON.

This case distinguishable from the cases of Hunt's heirs v. Robinson's heirs, (1 Tex. R. 748,) and Robbins' heirs v. Robbins' heirs. (3 Id. 496.)

It is no objection to the validity of a bond to convey, dated after the repeal of the restraint against alienation within six years, that there had been a previous agreement to the same effect, before the repeal, in pursuance of which the bond was executed.

Two brothers, John and Jacob, emigrated to Texas in 1832, and it was then agreed between them and their father, who had preceded them, that the headright of John should be located in a certain place which had been selected by the father, and should be divided equally between the brothers, as soon as the title should be obtained ; and that the headright of Jacob should, when obtained, be divided in the same way. In 1834, after the issue of title to John, and the repeal of the restraint against alienation, contained in the law of 1832, in cases where titles had been obtained, John executed to Jacob, in pursuance of their former agreement, a bond for title, specifying the boundaries. In the meantime Jacob went into possession and made valuable improvements and continued in peaceable possession until his death, in 1839. After his death his heirs remained in possession until about the commencement of this suit, (Nov. 19, 1850,) when they were ejected by John. After the death of Jacob, who had neglected to obtain his headright, John obtained a certificate in behalf of his heirs, and procured it to be located and patented, claiming the one-half of it, under the agreements of 1832 and 1834. The heirs of Jacob brought suit to recover the possession and to be quieted in their title to the one-half of John's headright, praying also that the one-half of their father's headright might be adjudicated to John. *Held*, That the suit was well brought.

Appeal from Travis. This suit was brought (November 19th, 1850,) to recover title, and be quieted in the possession,